CARPENTER, administrator, *v.* BRADSHAW.

The trial judge erred in granting a nonsuit. There was evidence for the plaintiff from which the jury could have legally determined that the contract entered into by the intestate and the defendant was not expressed in the writing which the latter received and held, the meaning of which he (being unable to read or write) could not have ascertained for himself.

Argued November 15, — Decided December 10, 1902.

Equitable petition. Before Judge Henry. Floyd superior court. July 18, 1902.

*Lipscomb & Willingham* and *C. E. Carpenter,* for plaintiff.
*Seaborn & Barry Wright,* for defendant.

LITTLE, J. Carpenter as administrator of Drummond, deceased, complained of Bradshaw, and in an equitable petition filed in the superior court of Floyd county, as a basis for certain prayers which it contained, he alleged substantially the following as facts: In 1899 Drummond borrowed from Bradshaw $265 to pay off certain debts which he (Drummond) then owed, and to secure the loan he delivered to Bradshaw his warranty deed conveying certain eighty and one half acres of land in the county of Floyd, of the value of $800. At the time this conveyance was executed Bradshaw delivered to Drummond a written obligation to reconvey the land on payment of $286.92 on October 1, 1900. On or before said last-named day Drummond tendered to Bradshaw that sum of money for the purpose of cancelling the loan. This payment was not actually made, because Bradshaw deferred it, and put off Drummond from time to time until finally Drummond died. Afterwards, in December, petitioner again tendered to Bradshaw the sum of money named, together with interest, for the purpose of paying off the loan, and at the same time offered a deed to Bradshaw for execution, so as to reconvey the land to petitioner. Bradshaw refused to accept the money and cancel the loan, and alleged that the deed given him by Drummond was not to secure a loan but was an absolute sale. At the time of the loan Drummond was about 87 years old, feeble in both body and mind, and unable to leave his house; and he repeatedly sent messages to Bradshaw to come and get his money, but he did not do it. Bradshaw appropriated the rents of the land for 1900 and 1901, and refused to account for the same; he

also, after the death of Drummond, carried away, without any authority of law, certain personal property of the value of $250, which he refuses to return.   Petitioner asks that the court by its decree direct Bradshaw to deliver up the deed made to him by Drummond, for the purpose of cancellation, on the payment of the sum named in the bond for title, with interest thereon up to the time of his tender; that judgment be rendered in his favor for the value of the rents appropriated by Bradshaw ; that he may have a judgment against the latter for the value of the personal property wrongfully appropriated by the defendant.   He also prays that attorney's fees be allowed him.   In his petition he makes a continuing tender of the amount due on the loan.   By amendment it was alleged that the rental value of the land was $150 a year; and a prayer was added that Bradshaw be required to apply to his debt the rents of the land, and, if any amount remained due, that Bradshaw should have judgment with a special lien against the land,· and that the same should be sold thereunder, and any balance which remained after paying Bradshaw should be paid to the petitioner.· In his answer the defendant generally denied the allegations, and put the plaintiff on proof òf the same.   A plain warranty deed from Drummond to Bradshaw, dated October 25, 1899, for a consideration of $265, conveying title to eighty and one half acres (being the land in controversy) to Bradshaw, was introduced in evidence; and also an instrument in writing executed by Bradshaw, as follows:

"Know all men by these presents, that I, H. J. Bradshaw, have this day bought 80 and 1/2 acres land from G. L. Drummond and W. H. Drummond, being one half of lot No. 230 in the 22nd district and 3rd section of Floyd county, Ga., and more fully described in land deed from G. L. Drummond to H. J. Bradshaw.    Be it understood that H. ·J. Bradshaw is the true owner of said described land, and from this day, Oct. 25th, 1899, are in full possession of said described land; that it is further understood that I, H. J. Bradshaw, have agreed to sell G. L. Drummond said described land, the trade to take effect Oct. 1st, 1900.    If on that day G. L. Drummond shall pay to H. J. Bradshaw the sum of $286-.95, cash in hand, H. J. Bradshaw agrees to sell said described land to G. L. Drummond.    But it is here understood that if G. L. Drummond fail to pay the amount named, $286.95, then this offer

by H. J. Bradshaw to sell G. L. Drummond is void. It is also understood that this is not a bond for title, and there is no notes taken, and is only a propose trade to G. L. Drummond, and to no other party; it is not transferable; and it is further understood that H. J. Bradshaw will not make deed, or sell said described land to any other person at the price named, and if H. J. Bradshaw have the least idea that the deed are to be made to Drummond and from him to some other person, H. J. Bradshaw reserve the right to himself to be the sole judge on this matter; and if the said Bradshaw believe there is any trick, or arrangements to get the deed for another party outside the G. L. Drummond, H. J. Bradshaw reserve the right to himself not to make the deed. This Oct. 25, 1899.                    [Signed] H. J. Bradshaw."

It was shown on the part of the plaintiff, that his intestate had been in feeble health for a number of years prior to his death; that in October, 1899, intestate sent his son, G. F. Drummond, to see Bradshaw for the purpose of borrowing $265 to pay off an indebtedness; that Bradshaw agreed to loan the sum to intestate, but preferred to take a deed instead of a mortgage, to prevent the wife of intestate from taking a year's support or dower in case of intestate's death; that Bradshaw afterwards came to the house of intestate, had the papers made, and paid off the indebtedness of intestate to the amount of $265. At the same time, according to the evidence of the witness G. F. Drummond, Bradshaw stated to his father that he would reconvey the land on the payment of the $265 with interest. The intestate could neither write his own name nor read. Afterwards, in the fall of 1900, the intestate sent this witness to see Bradshaw concerning the payment of the loan, and witness told Bradshaw that his father desired him to come to the house and get the money, and that his father had it there for him. Bradshaw then stated that he would not reconvey the land to intestate, unless a certain execution which he then held against the intestate was paid off, and unless intestate would permit him to retain a particular part of the land on which were located certain barns and a blacksmith-shop. The witness further stated that he went to see Bradshaw two or three times after this, and endeavored to get him to go to the house of his father and settle the loan, but he would not go; that defendant took charge of the land in 1900 and rented it out, and has been in possession ever since; that

sometime in 1901 the defendant came to his father's former home and carried off two horses, a wagon, a set of blacksmith tools, a cultivator, and a lot of other personal property which belonged to his father; that the land which was conveyed as security was worth $700 or $800. At the time Bradshaw came and carried off the personal property he held a mortgage which the witness, son of intestate, had given after the death of his father. This witness also testified that his father never tendered any money to Bradshaw, and that the latter took the personal property with his (witness's) consent, and applied it to the payment of an execution held against the witness, his father, and his brother. Another witness testified that he was present at the execution of the deed to Bradshaw, and that the latter said he would reconvey the land to intestate when he paid back the money which he advanced. A number of witnesses testified that the value of the land was from $700 to $800, and that intestate was in very feeble health for some years prior to his death. The value of the land for rent in 1900 and 1901 was also shown. At the conclusion of the evidence for the plaintiff a motion to nonsuit the case was made by defendant's counsel, on the ground that time was of the essence of the agreement to reconvey, and that plaintiff had no right to sue for the land, and that it appeared from the plaintiff's evidence that Bradshaw held an execution against the intestate and his two sons, and the personal property was appropriated to the amount due thereon. The trial judge granted the order of nonsuit, and plaintiff excepted.

We reverse the judgment of the court below, and think the order of nonsuit was error. The proceeding instituted was an equitable one, and alleged fraud on the part of defendant. The evidence was conclusive that the intestate was an old, feeble man, unable to read or write. The fact is not contested that, being indebted, the intestate desired to borrow some money in order to pay his debts, and that he did borrow the necessary sum from the defendant, and secured the payment of the same by a conveyance of title. It is not necessary for us now to enter into any discussion as to the legal effect of the instrument which Bradshaw gave to Drummond at the time the latter conveyed title to the land, which on its face bears but little evidence that the terms it expressed were either fair or just. If the transaction between the parties was a mere contract of borrowing and lending money, the incidents

which attach to such a contract are fixed by law. As a general rule, time is not of the essence of a contract of this kind. Whether it was the intention of the parties that it should be so in this case is a question which is practically denied on the part of the plaintiff, and asserted by the defendant. That it appears in the written agreement here is not absolutely controlling, for the reason that there is evidence to the effect that at the time he made the deed both the intestate and the defendant understood the transaction differently. It is true that written instruments ordinarily supersede verbal agreements touching the same subject-matter; but it must be remarked that it was shown that intestate could neither read nor write, and the witnesses testified to a state of facts which, if true, would authorize the jury to believe that he did not knowingly enter into the agreement set out in the instrument in reference to a reconveyance of the land. Therefore the material question in this case was, did the parties actually enter into it? Did the intestate at the time he made the conveyance agree to and understand the instrument of writing as now claimed and interpreted by the defendant? If he did not, he could not be held to such agreement. Did he accept this instrument under the belief that as a matter of right he or his personal representatives would be entitled to a reconveyance of the land on the payment of the debt? If he did, then his rights are not measured by this instrument; but to have a reconveyance it is only necessary that the amount due on the debt be paid by his representative. Neither he nor his representative would be estopped from setting up a different contract than that indicated in the writing, because of the inability of the intestate to ascertain for himself what the writing contained, if it be true that the defendant committed a fraud on him, and the intestate believed the writing to be a mere instrument obliging the defendant to reconvey. In any event this case should have gone to a jury. There was evidence which would have authorized the jury to determine that the written instrument did not set out the true agreement of the parties, and the court erred in granting a nonsuit. Again, while it was not shown that Drummond in his lifetime actually tendered the defendant the amount of money due him, yet there was evidence which might be held to be sufficient to waive and excuse an actual tender. That is, that the defendant declined, when he was asked to go and receive the money, to reconvey the

land even upon payment of the debt, unless certain conditions not incorporated in the contract were complied with. We do not, of course, pretend to say how all these matters are; but from the general aspect and bearing of the evidence for the plaintiff the jury might have justly ascertained the existence of certain equities in favor of the plaintiff which would affect the binding force of the written instrument, and to the jury this and any other competent evidence should have gone, and under proper instructions they should have been left to determine all of the facts of the transaction.

*Judgment reversed. All the Justices concurring, except Lumpkin, P. J., absent.*